IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00126-PAB-MJW

HARVEY M.  HARGER,

Plaintiff,

v.

ED SCHAFER, Secretary,
United States Department of Agriculture,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 23)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the undersigned pursuant to an Order of Reference to United States Magistrate Judge issued by District Judge Philip A. Brimmer on January 26, 2009.  (Docket No. 2).

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the pro se plaintiff's First Amended Employment Discrimination Complaint which was filed on June 15, 2009.  (Docket No. 22).

Now before the court for a report and recommendation is the defendant's Motion to Dismiss (Docket No. 23) the plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff filed a response (Docket No. 26), defendant filed a reply (Docket No. 27), and plaintiff filed a sur-reply (Docket No. 28).  Upon the court's directive

(Docket No. 35), the defendant filed a Supplemental Brief in Support of Motion to Dismiss (Docket No. 38), to which plaintiff filed a response (Docket No. 41).  The court has considered all of these motion papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court's file.  The court now being fully informed makes the following findings and recommendation that the defendant's motion be granted.

Plaintiff's First Amended Employment Discrimination Complaint is not a model of clarity.  Plaintiff Harvey M. Harger asserts the following in that pleading.  Defendant consistently discriminated against the plaintiff during the course of the plaintiff's employment by defendant.  On November 15, 1999, through September 20, 2003, plaintiff entered into seasonal and volunteer agreements with the United States Department of Agriculture, Shoshone National Forest, Wapiti Ranger Station, in Wyoming to provide certain employment services to the defendant.

On October 5, 1999, the Wapiti District Ranger, Brent Larson, called a meeting with plaintiff and plaintiff's wife (who is not a party) to discuss employment at the Wapiti Ranger Station.  Larson promised plaintiff seasonal employment in the summer months and a volunteer position year-round.  Plaintiff's wife was to be a year-round volunteer.  They were promised compensation just like previous volunteers, namely, the same $15 per day, free rent and utilities, same work load, and a promise of promotion in federal pay grade for plaintiff.  Based on those promises, on November 15, 1999, plaintiff and his wife moved into the Wapiti Ranger Station.  No volunteer agreement was written or signed.

On April 12, 2000, a meeting was called at the Ranger Cabin by Mary Jane

3

Luther and Katherine Pineger, and work orders were issued.  It was stated during that meeting that the "Shafer volunteer agreement [is] no longer in effect, yours and Cheryl's [plaintiff's wife] volunteer agreement will be different, Harvey will work 40 hours, 8:00 to 4:30 at Visitor Center, and Harvey your volunteer work will be completed after 5:00." (Docket No. 22 at 3).  The next day, Larson called a meeting at the Ranger Cabin and stated "Dorene Austin(bean counter) was changing everything at the Ranger Station, you will have to pay for your rent and utilities, no $15 per day, you will work for rent as in your volunteer agreement, rent will be deducted from your seasonal payroll.  I'll try to change this or give you a higher grade in payroll."  (Docket No. 22 at 3).

From April 27, 2000, through September 30, 2000, plaintiff signed a seasonal contract as Information Receptionist at Wapiti Valley Visitor Center.  Rent and utilities were deducted from his pay, and he was ordered to complete volunteer work for rent and utilities at Ranger Cabin.

On October 26, 2000, plaintiff and his wife signed a volunteer agreement.  No volunteer agreements were issued in 2001.  Plaintiff and his wife objected to paying for rent and also working for the same month's rent.  No other employee, such as young females plaintiff trained, similarly paid double for rent.  Plaintiff and his wife were ordered to continue with the 2000 agreement.

Plaintiff signed a seasonal contract for 2001.  Plaintiff signed a seasonal contract for the year 2002, but the District Office failed to return a copy.

On April 15, 2002, Larson ordered plaintiff to study and be certified with the Park County Weed Control in Cody, Wyoming, to spray for noxious weed control on the Shoshone National Forest, North Fork corridor.  The spraying work was to be performed

after plaintiff's eight-hour day at the Visitor Center with no overtime pay.

On October 29, 2002, plaintiff and his wife signed a volunteer agreement which instructed them to complete an extra 35 hours of work per month for rent and utilities year-round, including the period of time covered by the summer seasonal contract when rent was deducted from plaintiff's pay. This extra workload consisted of an extra four to five hours per day with no overtime pay. Plaintiff was ordered to maintain a record of completed work.

No volunteer agreement was issued in the year 2003. On January 21, 2003, Larson called a meeting at the Ranger Cabin, and plaintiff and his wife were ordered to pay $543 per month year-round and continue to work the extra 35-hours per month year-round for rent and utilities at the Ranger Cabin. Larson added a Recreational Survey onto plaintiff's volunteer work agreement, but plaintiff objected, claiming it was double-charge for rent. Larson stated, "you will do as I tell you to do, if you do not pay the $543, we will not be able to open our campgrounds this summer nor hire seasonal employees to work in them, you will do has [sic] I tell you or I will move you out of this cabin." (Docket No. 22 at 5). Plaintiff objected, noting that young females were being paid overtime or receiving comp time for working the recreational survey. Larson stated, "your overtime is for rent." (Docket No. 22 at 5). Plaintiff's wife attended the meeting at which time her leg was in a cast from the Forest Service's negligence as a result of its failure to repair a faulty leaking gutter system at the entrance of the Ranger Cabin. Plaintiff's wife fell on an icy sidewalk and badly injured her hand. She was badly hurt and depressed by Larson's threatening nature. Larson stated at that time, "I can smell gas and could hear the banging noise from heater."

On April 14, 2003, plaintiff signed a seasonal contract for May 19 to September 5, 2003. The contract ended September 19, 2003.

Plaintiff requested the time and attendance sheets of the young females working with him at the Ranger Station, but the Forest Service, in a deliberate cover-up, mailed 65 pages about a firefighting crew in South Dakota. Plaintiff has the time and attendance sheet of Emilly Doolley.

On several occasions Larson made the remark, "Harvey's a good ole boy who is willing to do the work." (Docket No. 22 at 5). In a meeting with Shoshone National Forest Administrative Officer Austin, Ms. Austin stated, "Harvey are you on vacation out there? You are always on vacation. Are you to [sic] old for the work?" (Docket No. 22 at 5-6).

Plaintiff seeks declaratory, injunctive, and monetary relief. (Docket No. 22 at 6).

## **DEFENDANT'S MOTION TO DISMISS**

Defendant seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff did not exhaust his remedies because he failed to make a timely complaint of discrimination to an Equal Employment Opportunity ("EEO") counselor and (2) plaintiff has failed to allege a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, or the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th

6

Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleadings have been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the

plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Exhaustion**

Defendant asserts that the plaintiff's claims are barred because he did not exhaust them. Pursuant to 29 C.F.R. § 1614.105(a)(1), "[a]ggrieved persons who believe they have been discriminated against on the basis of . . . sex . . . [or] age . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter. . . . An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." "The failure to do so bars the employee from pursuing a claim relating to such discriminatory act in federal court." McPhillips v. Mineta, 2008 WL 596133, at *3 (D. Colo. Feb. 29, 2008) (citing Davis v. United States Postal Serv., 142 F.3d 1334, 1340 (10th Cir. 1998)). Here, this court agrees with the defendant that the plaintiff did not timely contact an EEO counselor with respect to the claims raised in the Amended Complaint.

Attached to the original Complaint[1] is a copy of a letter dated June 13, 2003, that plaintiff purportedly sent to Rebecca Aus, Supervisor at the Shoshone National Forest. (Docket No. 1-6 at 1-2). In that letter, plaintiff complains about a list of items that he described as "discriminating in nature, breach of contracts, breach of promises, false

---

[1] When ruling on a 12(b)(6) motion to dismiss, the court may consider matters of which a court may take judicial notice, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), such as the original Complaint filed in this action. The court may take judicial notice whether requested or not. Fed. R. Evid. 201(c).

8

statements, misrepresentation, misleading, intimidation, violation of civil rights, total negligence, failure to correct hazard conditions that resulted in injury." (Docket No. 1-6 at 1). Included in that list of complaints was "volunteer agreement," "salary discrepency" [sic], and "Brent Larson threats, not signing volunteer agreement, rent and rent increases, security at ranger station, seasonal help(if not paying rent), feeding of horses, etc." (Docket No. 1-6 at 2). Also attached to the original Complaint is a letter dated June 15, 2003, which plaintiff purportedly mailed to the Denver Regional Office of the United States Department of Agriculture in which he raises a claim of gender, age, and wage discrimination. (Docket No. 1-6 at 3-4).

Even assuming that these letters (1) were, in fact, sent by the plaintiff, (2) were received by the addressees, (3) were addressed to counselors as provided by 29 C.F.R. § 1614.105, and (4) contained all of the claims that are raised here,[2] these letters do not show that the plaintiff timely and properly exhausted the claims contained in the Amended Complaint because such claims are premised on alleged discriminatory acts that occurred more than 45 days before his purported June 13, 2003, letter. Plaintiff alleges acts that purportedly occurred in 1999, 2000, 2001, 2002, January 2003, and lastly on April 14, 2003, when he signed a seasonal contract. There are no discriminatory acts alleged which occurred between April 29, 2003 (45 days before the purported June 13 letter), and June 13 or 15, 2003, when plaintiff's letters were purportedly sent. While plaintiff alleges in his amended pleading that the seasonal

---

[2]Defendant correctly notes that read broadly, the June 2003 letters do not include claims that plaintiff was improperly denied overtime, flex time, comp time, or that he was forced to participate in a weed control program. (Docket No. 38 at 7).

contract he signed on April 14, 2003, was for work between May 19 to September 5, 2003, and that the contract ended September 19, 2003, the applicable administrative deadline would have run from the April 14 date, not the May or September dates.  "It is . . . settled that the applicable administrative deadlines run from the time of the discriminatory act, not from the time of a later, inevitable consequence of that act." Conkle v. Potter, 46 Fed. Appx. 950, 952 (10th Cir. Sept. 17, 2002) (quoting Young v. Nat'l Ctr. for Health Servs. Research, 828 F.2d 235, 237 (4th Cir. 1987)).  See McPhillips v. Mineta, 2008 WL 596133, at *3 (D. Colo. Feb. 29, 2008) ( "[T]he time limit begins to run when the employee becomes aware of the adverse employment action." ) (quoting Turton v. Kempthorne, 2007 WL 2788618, at *4 (D. Colo. 2007)).  Therefore, this court agrees with the defendant that there are no claims that plaintiff has exhausted and upon which he may proceed in this action.

Based upon the findings above and in the interest of judicial economy, the court will not address defendant's alternate basis for dismissal.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants Motion to Dismiss **(Docket No. 23)** be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need**

10

**not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  February 24, 2010  
      Denver, Colorado

s/ Michael J. Watanabe  
Michael J. Watanabe  
United States Magistrate Judge