IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00126-PAB-MJW

HARVEY M. HARGER,

Plaintiff,

v.

ED SCHAFER, Secretary,
United States Department of Agriculture,

Defendant.

---

**RECOMMENDATION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Docket No. 64)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before the undersigned pursuant to an Order of Reference to United States Magistrate Judge issued by District Judge Philip A. Brimmer on January 26, 2009. (Docket No. 2).

The operative pleading is the pro se plaintiff's First Amended Employment Discrimination Complaint which was filed on June 15, 2009. (Docket No. 22). Plaintiff asserts the following in that pleading, which is not a model of clarity. Defendant consistently discriminated against the plaintiff during the course of the plaintiff's employment by defendant. On November 15, 1999, through September 20, 2003, plaintiff entered into seasonal and volunteer agreements with the United States Department of Agriculture, Shoshone National Forest, Wapiti Ranger Station, in

Wyoming to provide certain employment services to the defendant.

On October 5, 1999, the Wapiti District Ranger, Brent Larson, called a meeting with plaintiff and plaintiff's wife (who is not a party) to discuss employment at the Wapiti Ranger Station. Larson promised plaintiff seasonal employment in the summer months and a volunteer position year-round. Plaintiff's wife was to be a year-round volunteer. They were promised compensation just like previous volunteers, namely, the same $15 per day, free rent and utilities, same work load, and a promise of promotion in federal pay grade for plaintiff. Based on those promises, on November 15, 1999, plaintiff and his wife moved into the Wapiti Ranger Station. No volunteer agreement was written or signed.

On April 12, 2000, a meeting was called at the Ranger Cabin by Mary Jane Luther and Katherine Pineger, and work orders were issued. It was stated during that meeting that the "Shafer volunteer agreement [is] no longer in effect, yours and Cheryl's [plaintiff's wife] volunteer agreement will be different, Harvey will work 40 hours, 8:00 to 4:30 at Visitor Center, and Harvey your volunteer work will be completed after 5:00." (Docket No. 22 at 3). The next day, Larson called a meeting at the Ranger Cabin and stated "Dorene Austin(bean counter) was changing everything at the Ranger Station, you will have to pay for your rent and utilities, no $15 per day, you will work for rent as in your volunteer agreement, rent will be deducted from your seasonal payroll. I'll try to change this or give you a higher grade in payroll." (Docket No. 22 at 3).

From April 27, 2000, through September 30, 2000, plaintiff signed a seasonal contract as Information Receptionist at Wapiti Valley Visitor Center. Rent and utilities were deducted from his pay, and he was ordered to complete volunteer work for rent

and utilities at Ranger Cabin.

On October 26, 2000, plaintiff and his wife signed a volunteer agreement. No volunteer agreements were issued in 2001. Plaintiff and his wife objected to paying for rent and also working for the same month's rent. No other employee, such as young females plaintiff trained, similarly paid double for rent. Plaintiff and his wife were ordered to continue with the 2000 agreement.

Plaintiff signed a seasonal contract for 2001. Plaintiff signed a seasonal contract for the year 2002, but the District Office failed to return a copy.

On April 15, 2002, Larson ordered plaintiff to study and be certified with the Park County Weed Control in Cody, Wyoming, to spray for noxious weed control on the Shoshone National Forest, North Fork corridor. The spraying work was to be performed after plaintiff's eight-hour day at the Visitor Center with no overtime pay.

On October 29, 2002, plaintiff and his wife signed a volunteer agreement which instructed them to complete an extra 35 hours of work per month for rent and utilities year-round, including the period of time covered by the summer seasonal contract when rent was deducted from plaintiff's pay. This extra workload consisted of an extra four to five hours per day with no overtime pay. Plaintiff was ordered to maintain a record of completed work.

No volunteer agreement was issued in the year 2003. On January 21, 2003, Larson called a meeting at the Ranger Cabin, and plaintiff and his wife were ordered to pay $543 per month year-round and continue to work the extra 35-hours per month year-round for rent and utilities at the Ranger Cabin. Larson added a Recreational Survey onto plaintiff's volunteer work agreement, but plaintiff objected, claiming he was

double-charge for rent. Larson stated, "you will do as I tell you to do, if you do not pay the $543, we will not be able to open our campgrounds this summer nor hire seasonal employees to work in them, you will do has [sic] I tell you or I will move you out of this cabin." (Docket No. 22 at 5). Plaintiff objected, noting that young females were being paid overtime or receiving comp time for working the recreational survey. Larson stated, "your overtime is for rent." (Docket No. 22 at 5). Plaintiff's wife attended the meeting at which time her leg was in a cast from the Forest Service's negligence as a result of its failure to repair a faulty leaking gutter system at the entrance of the Ranger Cabin. Plaintiff's wife fell on an icy sidewalk and badly injured her hand. She was badly hurt and depressed by Larson's threatening nature. Larson stated at that time, "I can smell gas and could hear the banging noise from heater."

On April 14, 2003, plaintiff signed a seasonal contract for May 19 to September 5, 2003. The contract ended September 19, 2003.

Plaintiff requested the time and attendance sheets of the young females working with him at the Ranger Station, but the Forest Service, in a deliberate cover-up, mailed 65 pages about a firefighting crew in South Dakota. Plaintiff has the time and attendance sheet of Emilly Doolley.

On several occasions Larson made the remark, "Harvey's a good ole boy who is willing to do the work." (Docket No. 22 at 5). In a meeting with Shoshone National Forest Administrative Officer Austin, Ms. Austin stated, "Harvey are you on vacation out there? You are always on vacation. Are you to [sic] old for the work?" (Docket No. 22 at 5-6).

Plaintiff seeks declaratory, injunctive, and monetary relief. (Docket No. 22 at 6).

In an Order filed on March 18, 2010, Judge Brimmer granted the defendant's motion to dismiss (Docket No. 23) in part and denied it in part. (Docket No. 61 at 7). Plaintiff's gender discrimination claim, brought pursuant to Title VII of the Civil Rights Act, was dismissed, but plaintiff's age discrimination claim under the Age Discrimination in Employment Act was permitted to go forward at that point. (Docket No. 61 at 7).

Now before the court for a report and recommendation is the defendant's Motion for Summary Judgment (Docket No. 64). Plaintiff filed a response (Docket No. 71), defendant filed a reply (Docket No. 73), and plaintiff filed a sur-reply (Docket No. 75). The court has considered all of these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings and recommendation that the defendant's motion be granted.

Rule 56(c)(2) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

In the summary judgment motion now before the court, the defendant asserts (1) plaintiff's claims are barred by his failure to exhaust; (2) summary judgment should be granted on the remaining age discrimination claim because (a) plaintiff cannot prove disparate treatment among similarly-situated employees, (b) he cannot show that his

age was the "but-for" cause of any action, and (c) the agency has offered legitimate, non-discriminatory reasons for its actions; and (3) any claims other than age discrimination that plaintiff purports to bring are not cognizable here.

**EXHAUSTION**

Previously, this court recommended that the defendant's motion to dismiss be granted based upon the plaintiff's failure to exhaust his claims. (Docket No. 57, Report and Recommendation filed on February 24, 2010). Judge Brimmer, however, made the following findings with respect to the issue of exhaustion and overruled the recommendation as it pertained to that issue:

> Pursuant to federal regulation, a federal employee asserting an employment discrimination claim "must initiate contact with a[n] [Equal Employment Opportunity] Counselor within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Compliance with this forty-five day administrative provision is a prerequisite to filing suit in federal court. *See, e.g., Maybery v. E.P.A.*, No. 09-3053, 2010 WL 618031, at *1 (10th Cir. Feb. 23, 2010); *see also Dimsdale v. Peters*, 217 F. App'x 743, 746 (10th Cir. 2007) ("The regulation places no limits on when an aggrieved party may contact a counselor if all he seeks is an informal resolution of his complaint; however, if an aggrieved party wishes to pursue a formal complaint or a lawsuit, he must contact the Counselor within forty-five days."). However, compliance is not necessarily a *jurisdictional* prerequisite. While complete failure to initiate contact with an EEO counselor is a jurisdictional bar to the Court considering a claim, failure to contact such a counselor in a timely manner is not. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002). Procedurally, this means that whether a plaintiff initiated contact with an EEO counselor in a timely manner is a question of whether plaintiff has stated a claim, evaluated under Rule 12(b)(6), rather than whether the Court has subject matter jurisdition over that claim, evaluated under Rule 12(b)(1). *Beene v. Delaney*, No. 02-0602, 2003 WL 21480698, at *3 (10th Cir. June 27, 2003) (citing *Sizova*, 282 F.3d at 1324-26). Substantively, this means that the forty-five day time limit may be tolled in appropriate circumstances. *Sizova*, 282 F.3d at 1325.
>
> Plaintiff appears to have properly initiated contact with an EEO counselor. Attached to plaintiff's original complaint are two letters - dated

June 13, 2002, and June 15, 2003, respectively - that were sent to Forest Service administrators and that assert problems with plaintiff's working conditions. Compl., Ex. 2 [Docket No. 1-6 at 1-4]. Defendant concedes, at least for the purpose of this motion, that these letters comply with the technical requirements of 29 C.F.R. § 1614.105, but contends that the letters were untimely. [Docket No. 38 at 6]. Because plaintiff has presented matters outside of his complaint in support of his exhaustion argument, and because I have considered those materials in assessing the issue, defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. *Beene*, 2003 WL 21480698, at *3 (citing Fed. R. Civ. P. 12(b)). Under this standard, the critical question is whether there is a genuine dispute over any facts material to the exhaustion issue. Fed. R. Civ. P. 56(c).

In both his response to defendant's motion to dismiss and his objections to the magistrate judge's recommendation, plaintiff argues that he suffered discrimination at a meeting in mid-May 2003, when he was ordered to keep up his workload and to continue to pay rent for his stay at the ranger cabin. [Docket No. 41 at 2; Docket No. 59 at 11]. This meeting occurred within forty-five days of plaintiff sending his letters to Forest Service officials. However, there is no indication that any new discrimination occurred at the May 2003 meeting. Rather, it seems that plaintiff was simply told, again, that he would be required to work and to pay rent as he had been in the past. A federal employee is required to contact a counselor within forty-five days of the allegedly discriminatory action. *See Conkle v. Potter*, 46 F. App's 950, 952 (10th cir. 2002) ("It is . . . settled that the applicable administrative deadlines run from the time of the discriminatory act, not from the time of the later, inevitable consequence of that act.'" (quoting *Young v. Nat'l Ctr. for Health Servs. Research*, 828 F.2d 235, 237 (4th Cir. 1987))). It is not at all clear that this May meeting involved a discrete discriminatory decision sufficient to make plaintiff's June letters timely.

But even if these letters were sent more than forty-five days after any discriminatory actions, plaintiff may still have exhausted his administrative remedies. Section 1614.105 requires that the agency extend the forty-five day time limit "when the [complaining] individual shows that he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.105(a)(2). Plaintiff claims that this was precisely the case here, i.e., because there were no instructions about the filing period at the ranger station where he worked, he "was not aware there was a time limit to report the discriminating action." [Docket No. 59 at 12]. The administrative judge who originally considered plaintiff's discrimination charge agreed with plaintiff on this point. The judge denied defendant's motion to dismiss for failure to

> comply with the forty-five day requirement, ruling that the agency had not produced evidence of any posters, brochures, or other information conveying the forty-five day limit and thus had failed to show that plaintiff was actively or constructively aware of the deadline. [Docket No. 59-2 at 11.] At the very least, there is a dispute of fact over whether plaintiff was excused from filing within forty-five days of any allegedly discriminatory conduct. I cannot dismiss the case at this stage for failure to timely exhaust.

(Docket No. 61 at 2-5) (footnote omitted).

Defendant moved to vacate that portion of Judge Brimmer's Order, noting that while the ALJ had initially ruled in plaintiff's favor on the issue of whether plaintiff was informed of the 45-day deadline, the ALJ subsequently granted the Agency's motion for reconsideration after the Agency was given the opportunity to submit evidence and show that the plaintiff had been informed of the 45-day deadline via posters and orientation materials that disclosed the deadline. The ALJ ultimately concluded that the Agency gave the plaintiff constructive notice of his EEO rights and the 45-day deadline in particular. (Docket No. 63 at 1-2). Judge Brimmer denied defendant's motion, finding that partially vacating the March 18, 2010 Order (Docket No. 61) was unwarranted and that "Defendant is not precluded from filing a motion for summary judgment on the issue of whether plaintiff was aware of the requirement that he contact and Equal Employment Opportunity counselor within 45 days of any alleged discriminatory act and, in fact, has already done so." (Docket No. 65). The day before that Order was issued, defendant filed the instant motion for summary judgment.

In this summary judgment motion, defendant once again asserts that the plaintiff's claims are barred by his failure to exhaust because he did not make contact with an EEO Counselor within 45 days, his claims do not fall within any exception to

extend the 45 days, and claims that were not raised in the June 2003 letters are barred. Once again, for purposes of this motion, defendant assumes that the unsigned letters dated June 13 and 15, 2003, by plaintiff were received by the Forest Service addressees and were properly addressed to counselors as provided in 29 C.F.R. § 1614.105. Even assuming both of these facts, however, defendants assert that the letters do not show that plaintiff timely and properly exhausted his claim. More specifically, defendant asserts that the plaintiff's claim here is in essence that the was "double charged" for rent for the cabin and was denied overtime for his work when he was promised free rent in exchange for volunteer work, but then he was improperly charged rent during the season. In the Amended Complaint, plaintiff contends the promises about free rent were allegedly made in October 1999 and were breached in April 2000. No money was withheld from plaintiff's pay for rent until May 2001, and thus defendant asserts that regardless of which date is used, at the latest as of May 2001, plaintiff unquestionably knew of the alleged discriminatory actions. Because his June 2003 letters to the Forest Service were dated more than two years later, it is asserted that the plaintiff's claims are untimely. Defendant similarly asserts that plaintiff's claims premised on alleged discriminatory acts that occurred later in 2000, 2001, 2002, and anytime before April 29, 2003 (45 days before June 13, 2003) are barred. Furthermore, defendant asserts that plaintiff has no evidence of any discrete discriminatory acts that occurred within 45 days of the June letters (acts which allegedly occurred between April 29 and June 13 or 15, 2003). Thus, defendant asserts there are **no** claims that plaintiff has exhausted and upon which he may proceed.

Plaintiff's response to the summary judgment is again not a model of clarity. It

appears that plaintiff claims that on February 21, 2003, he received notice from Mr. Larson that plaintiff would have to pay year-round rent and continue to work under the volunteer agreement, and attached to his response (Docket No. 71-1 at 6) is a written notice dated February 28, 2003, regarding a change in rent, and a bill dated March 3, 2003, for rent. (Pl.'s Ex. H).

This court finds, however, as asserted by the defendant, that even assuming that it is true plaintiff received notice from Larson on February 21, and even using the later dates of February 28 (the written notice) and March 3 (the bill), plaintiff failed to raise his claim to an EEO counselor within 45 days (by April 7, 14, or 17, 2003). While plaintiff also argues that "in the May 14, 2003 meeting it was confirmed" that he would have to work his volunteer hours and pay rent, even assuming such facts to be true, this court finds that confirmation of a prior act does not result in a discrete, independent act of discrimination so as to extend or renew the time to file an EEO complaint. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

In addition, defendant asserts there are no grounds for extending the 45-day deadline here. Defendant notes that the first exception, related to notice, is an objective one that examines whether the available information is "reasonably geared" to inform employees of the relevant time limit. (Docket No. 64 at 13, citing Pauling v. Secretary of

Dep't of Interior, 960 F. Supp. 793, 804-05 (S.D.N.Y. 1997) (summary judgment granted when plaintiff claimed he had no knowledge of the regulation but agency posted EEO posters disclosing the time limit.)). Here, defendant argues that the Forest Service informed employees of the 45-day requirement by a poster that was prominently placed at the Wapiti Ranger District's Office and materials that were distributed during employee orientations at the start of each season, which plaintiff would have been required to attend in 200, 2001, 2002, and 2003. These materials and the poster informed employees of the 45-day time limit, how to request EEO counseling, and how to file and EEO complaint. Therefore, defendant asserts that the plaintiff had constructive notice of this deadline.

Defendants have submitted copies of the materials distributed during employee orientation which include information regarding the 45-day time limit. (Docket No. 64-5 at 3-4). In addition, Glenda Kuhn, a former Support Services Supervisor on the Wapiti Ranger District in 2002, makes statements concerning these materials in a Declaration which include the following:

> Shortly after I was hired as a Support Services Supervisor, I was given a packet of materials for new employees by Mark Hight, who was the Human Resources Officer. These materials included information about EEO procedures, including specifically the requirement that an employee make contact with an EEO counselor within 45 days of any discriminatory acts. Attached hereto as Attachment 1 is a copy of the cover of the folder that I was given in 2002, as well as the relevant hand-outs found inside the folder relating to EEO rights. It is my understanding that new employees were given this packet of information when they attended an orientation session in either late May or early June.
>
> []. During the time that I worked at the Wapati Ranger District, there was a poster that advised employees of the requirement to make an EEO contact within 45 days. This poster was displayed in the common area, near the men's room, at the Wapiti Ranger Station Office in Cody.

(Docket No. 64-5 at 1-2, ¶¶ 3-4).

In addition, the defendants have provided the Declaration of Mary Jane Luther (Docket No. 64-6), a Forestry Technician, which includes the following statements. She knows plaintiff and was his second-line supervisory when he worked at the Wapiti Ranger District. Plaintiff worked at the Wapiti Ranger Station in 2000, and during the time he worked there, he made occasional visits to the Wapiti Ranger District Office in Cody. In connection with the plaintiff's EEO proceedings, she was asked to provide a copy of any posters regarding employees' EEO rights, and attached to her Declaration is a copy of the actual poster that was posted at the Wapiti Ranger District Office in Cody which was posted on a wall in the common area. Although the poster is undated, she believes it had been posted at the Wapiti Ranger District Office in Cody since at least 2001. That poster states "To file a formal complaint of discrimination the individual must first contact an EEO Counselor/Mediator within 45 days of the alleged discriminatory incident, or of reasonably learning of the possible discriminatory nature of the incident." Furthermore, during plaintiff's employment, new and seasonal were routinely provided with orientation materials which included materials describing the EOO process. During 2001-02, these materials were distributed by Mark Hight, the Human Resources Officer, typically at an orientation session. Plaintiff would have either attended such an orientation session or would have otherwise been provided with these materials.

Although plaintiff's response to the summary judgment is not easy to follow, it appears he is claiming he never saw poster until the agency representative mailed him a copy of his sur-reply that was submitted to the ALJ. In addition, he states he does not

deny attending orientation meetings, and he lists the meetings he attended and the topics of the meetings, but he claims he was never handed "a single sheet of paper in regards to discrimination." (Docket No. 71 at 18).

Based on plaintiff's response, there may very well be a genuine issue of material fact with respect to whether he was given the orientation EEO materials. There does not, however, appear to any genuine issue of material fact about whether the EEO poster was on the wall at the District Office. Plaintiff merely appears to say he did not see it, which is different from it not actually being posted. This court thus finds that there is no genuine issue of material fact with respect to whether plaintiff was given constructive notice of the 45-day deadline.

Further, this court agrees with the defendant that the plaintiff was aware of the allegedly discriminatory event. He was informed in 2001 that he would be charged rent during the season, and money was deducted from his paychecks during the 2001, 2002, and 2003 seasons. According to the plaintiff, he was informed in February 2003 that he would have to pay rent year-round. This court thus agrees with defendant's assertion that because knowledge of the allegedly discriminatory act triggers the 45 days and plaintiff became aware of such acts more than 45 days before he allegedly submitted his letter, his claims are barred.

The court further agrees with the defendant's assertion that even if the June 2003 letters rendered plaintiff's claims timely, those letters did not raise certain alleged discriminatory actions that plaintiff attempts to raise here. As defendant asserts, read broadly, those letters assert that plaintiff was discriminated against (1) when he received unequal pay, (2) when he was subjected to rent increases, (3) in connection

with the condition of his housing, and (4) when "threats" were made against him, but the letters do not include any claims that he was improperly denied overtime, flex time, comp time, or that he was forced to participate in a weed control program, as plaintiff has attempted to raise in various stages of this case. Therefore, those claims that were not raised in the June 2003 letters are not properly before this court.

**ADEA CLAIM**

Even if the plaintiff were found to have exhausted his claims, this court nevertheless recommends that summary judgment be granted to the defendant on the merits.

The only claim remaining in this case is plaintiff's employment discrimination claim based upon his age pursuant to the ADEA. "The ADEA, like other anti-discrimination statutes, includes a causation requirement. It prohibits employers from 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment *because* of such individual's age.'" Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1277 (10th Cir. 2010) (citing 29 U.S.C. § 623(a)(1)) (emphasis in original). "[T]o succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the evidence that [his] employer would not have taken the challenged action but for the plaintiff's age." Id. "[A]n employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as 'age was the factor that made a difference.'" Id.

The McDonnell Douglas three-step analysis to prove age discrimination is still utilized in ADEA cases in this Circuit. Id. Under that analysis, "a plaintiff may survive summary judgment by providing circumstantial rather than direct evidence of

discrimination. . . . To do so, the plaintiff must first demonstrate a prima facie case of unlawful discrimination. . . . If [he] succeeds under this first stage, the burden or production then shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. . . . Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual." Id. To make a prima facie showing, plaintiff must show: "1) that [he] is a member of the class protected by the [ADEA]; 2) [he] suffered an adverse employment action; 3) [he] was qualified for the position at issue; and 4) [he] was treated less favorably than others not in the protected class." Id. at 1279. "As to the fourth prong, plaintiff must also show that [he] was similarly situated to younger employees treated more favorably." Oleynikova v. Beye, 2010 WL 5464151, at *8 (D. Colo. Dec. 29, 2010).

Here, defendant asserts that the plaintiff cannot prove disparate treatment among similarly situated employees or that his age was the "but-for" cause of any action.

This court finds that the plaintiff has not made a prima facie showing of unlawful discrimination. Plaintiff has not shown that he met the fourth prong of the prima facie showing because there is no evidence of any disparate treatment of the plaintiff. At first, plaintiff was actually treated more favorably than the other employees by being allowed to live in the cabin without paying any rent in the 2000 season. Beginning in 2001, he was charged rent just like all the other seasonal employees were charged for their housing during the entire time he lived there. Defendants have shown (Docket No. 64 at 4, Declaration of Anita Spargur; Docket No. 64-2 at 36-48) and even visually

depicted through a summary table (Docket No. 64 at 5-6) the amount of rent charged for the plaintiff's cabin compared to what was charged for the housing for the other employees. Besides the Ranger's cabin where plaintiff and his wife resided, there were four other structures at the Wapiti Ranger station which were used to house employees and volunteers. Rental rates were determined by a computerized formula provided by the Department of Interior to the Region on a compact disk which considered factors such as the size of the residence, the level of privacy, the distance from the nearest town, and the value of the property, and not on the age of the employees. (See Docket No. 64-2, Ex. B, Attach. 6-9; Docket No. 64-4 at 2, ¶ 5). No one in the District was involved in the amount of rent to charge the plaintiff or the other people who resided at the Wapiti Ranger Station (Docket No. 64-4 at 2, ¶ 7), but if funds were available, the District could subsidize part or all of the rent by paying it from the District's budget, which was initially done for the plaintiff and his wife, but not for the other employees.

None of the younger workers rented the same type and quality of housing as the plaintiff and his wife. His cabin was substantially larger than the other housing, and the seasonal employees had housing that was smaller, shared with other tenants, had less privacy, and was less desirable than plaintiff's. Plaintiff's cabin had three bedrooms and a fireplace and had 1608 square feet. It was the only multi-room single family dwelling at the site and had been designated as an historic building. That cabin had the following monthly base rent rates: $383 in 1999; $510 in 200; $529 in 2001; and $553 in 2002. In contrast, the other structures were significantly smaller and had the following monthly rates. The Crews Quarters and the Crew Quarters-East, which were both dormitories with 576 square feet with one bedroom for a maximum of two tenants, as

well as the Guard Station, which was a converted garage and dormitory with 1023 square feet with two bedrooms for a maximum of four tenants, had rates per tenant of $109.80 for 2001 and $117.15 for 2002. The "Small Cabin" was a single-family house with 313 square feet and one bedroom for one tenant and had a rate of $231 for 2001 and $241 for 2002. The other employees were charged and paid rent based on the Department's computerized formulas.[1]

The court notes that the plaintiff even testified at his deposition that he thought the real reason the Forest Service wanted to start charging him for rent year-round in 2003 was "[s]o they wouldn't have to hire another seasonal." (Docket No. 64-1 at 17, lines 19-20).

Plaintiff has also provided no evidence to show any disparate treatment with regard to overtime, comp time, or flex time. With regard to overtime, plaintiff admitted he never requested it other than on one occasion, and that overtime was approved. (Docket No. 64-1 at 36, lines 9-13). He never requested flex time or comp time and has no knowledge as to whether other employees requested and were paid overtime, other than one instance in which a younger employee worked 13 out of the 14 days over the Fourth of July holiday.

Furthermore, plaintiff has not made any showing that he was similarly situated to

---

[1]As noted by the defendant, "[w]hen they were charged the full rent for the Ranger's Cabin, the Hargers paid approximately $294 each per month. An employee living in the small 313 square foot cabin, that was one-fifth the size of the Ranger's Cabin, paid $241 in 2002. Further, if the Guard Station, a 1023 square feet two-bedroom dormitory, was fully occupied with four tenants in 2002 at the base rent, the total rent paid to the Forest Service for that building would be $468.60." (Docket No. 64 at 18 n.5).

any other employee inasmuch as none of the other workers had similar employment and volunteer agreements; none of them were seasonal employees in the summer and volunteers in the off-season. (See Docket No. 64-1 at 21, line 25). In addition, as noted above, none of the others rented the same type and quality of housing as plaintiff.

Also, even if this court were to find that the plaintiff has established a prima facie case, the defendant has offered legitimate, non-discriminatory reasons for its actions at issue, including budgetary issues, the use of nationalized formulas to calculate rent, and the fact that the plaintiff and his wife would not sign a volunteer agreement in 2003 and thus there was no basis for them to continue to reside there. In addition, plaintiff has made no showing of pretext, i.e., a cover-up for intentional discrimination based on age.

The court further finds that the plaintiff has not shown that his age was the "but-for" cause of any of the actions alleged in his Amended Complaint. There is no evidence that shows that the rent decisions were made other than in response to budgetary issues. The amount of rent charged was based on a computer program issued by the Department of Interior, and age was not one of the factors utilized to set the rent. In addition, when questioned during his deposition, plaintiff agreed that Brent Larson's statement that "You're a good 'ol boy willing to do the work" was not a derogatory statement about his age, stating, "but it's an insinuation that I would do the work and everybody else jumped on the bandwagon, because they were loading me down. It was – there was an intentional and there was an insinuation." (Docket No. 64-1 at 45, lines 12-16). Therefore, plaintiff himself does not apparently believe that this statement shows discrimination based upon his age.

In sum, this court finds that based on all of the documents submitted, no

reasonable juror could find by a preponderance of the evidence that the plaintiff is entitled to a verdict on the only claim remaining in this case.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants Motion for Summary Judgment **(Docket No. 64)** be **granted**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: January 18, 2011
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge